**CITY OF AMARILLO v. YORK et al.**

No. 5496.

Court of Civil Appeals of Texas. Amarillo.

Dec. 14, 1942.

Rehearing Denied Jan. 18, 1943.

Monning & Singleton, of Amarillo, and Jas. W. Bassett, of Austin, for appellant.

Clayton & Bralley, of Amarillo, for appellees.

FOLLEY, Justice.

This suit was filed by the appellees, Bryan York and twelve other members of the Amarillo fire department, against the appellant, City of Amarillo, seeking recovery upon a quantum meruit for alleged overtime work performed by them as firemen during the period from January 16, 1940, to January 5, 1942. In addition to the claims of these appellees, thirty-five other firemen made assignments of their respective claims to three of the appellees and the latter sued for their own individual claims and also for those assigned to them. The suit is based on the alleged violation of Article 1583, Vernon's Ann.P.C., by the appellant city over a period of about 98 weeks.

The trial was before the court without a jury and judgment was rendered for the appellees against the appellant for a total of $21,457.83. There are no findings of fact nor conclusions of law.

The claims of each of the appellees together with the respective assignments aggregated more than $500 and no question of jurisdiction is presented.

The provisions of Article 1583 of the Penal Code which are pertinent here are as follows:

"1. No member of any fire department or police department in any city of more than twenty-five thousand (25,000) inhabitants shall be required to be on duty for more than six (6) days in any one week.

\* \* \* \* \* \* \*

"5. The city officials having supervision of the fire department and police department shall designate the days of the week upon which each such member shall not be required to be on duty, and the days upon which each such member shall be allowed to be on vacation.

\* \* \* \* \* \* \*

"The city official having charge of the fire department or police department in any such city who violates any provision of this Article shall be fined not less than Ten ($10.00) Dollars nor more than One Hundred ($100.00) Dollars, and each day on which said city official shall cause or permit any section of this Act to be violated shall constitute and be a separate offense."

Amarillo is a city of not less than 30,000, nor more than 75,000, inhabitants, according to the last federal census. It is a home rule city operated upon the city manager plan. It has a city commission of three members, one of whom is the mayor. The charter provides that the city commission shall appoint the city manager who shall be the administrative head of the municipal government and shall be responsible for the efficient administration of all departments, including the fire department. He has the power to appoint all appointive officers or employes of the city with the advice and consent of the commission and to remove all officers and employes appointed by him. He exercises control and supervision over all departments or offices that may be created by the commission and all officers and employes appointed by him, and all appointive officers and employes are subject to his peremptory discharge.

The regular firemen of the City of Amarillo were paid salaries ranging from $90 to $125 per month. The captains received $135 per month and the two assistant fire chiefs each received $145 per month. It appears that for several years prior to the inception of this lawsuit the firemen had been complaining to the fire

chief and others about their having to work seven days per week which they asserted was in violation of the provisions of Article 1583. They claimed they were working an extra day each week for which they were receiving no pay. These complaints were conveyed by the fire chief to the city manager sometime in 1936 or 1937. At that time, it seems, the firemen, who were divided into two platoons, were working in ten- and fourteen-hour shifts, the shifts alternating the first and sixteenth of each month and each fireman working a portion of each day, either ten or fourteen hours, for seven days each week. The complaints of the firemen continued and in 1939 they were apparently aggravated by the action of the city in allowing the policemen a day off duty each week. On August 7, 1939, in an attempt to comply with the statute in question and at the same time appease the firemen, the fire chief, under the direction of the city manager, posted a new schedule on the bulletin boards of the fire stations which provided that one shift should go on duty at 8 a. m. on Monday and work twenty-four hours, and the second shift to relieve the first shift at 8 a. m. Tuesday and work twenty-four hours, and then both shifts to resume the ten- and fourteen-hour alternating schedule for the remainder of each week. This change gave each shift a full twenty-four hours off duty each week but did not constitute twenty-four hours of a full calendar day. This arrangement apparently did not suit the firemen and the complaints were resumed. Thereafter, on December 1, 1939, another schedule was put into effect by the fire chief, making shifts at noon each day, with the result that each platoon, except the pbx operators, was alternately on duty twenty-four hours and off duty for twenty-four hours. The pbx operators worked in eight-hour shifts, beginning at 7 a. m., 3 p. m., and 11 p. m., respectively, for the first four days of each week, and on the fifth day the first shift remained on duty twelve hours and the second shift, twelve hours, which procedure continued until each operator had had a twenty-four hour period off duty, but such twenty-four hour period was not during the calendar day, and the result was that each of said operators still worked eight hours out of each calendar day of each calendar week. This schedule of December 1, 1939, is the one upon which this suit is founded. The effect of the schedule was that each fireman, other than the pbx operators, worked twelve hours out of each calendar day and eighty-four hours out of each calendar week, and the operators worked eight hours out of each calendar day and fifty-six hours in each calendar week.

The recovery herein was for the extra time in excess of the six calendar days per week that the respective firemen worked, the regular firemen claiming they worked twelve hours, and the pbx operators, eight hours, out of each calendar week in excess of the time prescribed by Article 1583, and for which extra time or overtime, by virtue of such Article, they assert they have not been paid.

We think this case is controlled largely by the decision of the Galveston Court of Civil Appeals and the Supreme Court in the combined causes of City of Galveston v. O'Mara and City of Galveston v. Heffernan et al., City of Galveston v. O'Mara, Tex.Civ.App., 146 S.W.2d 416; City of Galveston v. Heffernan et al., 138 Tex. 16, 155 S.W.2d 912. Some of the same principles of law therein announced are applicable here upon a very similar state of facts. In the Galveston cases the firemen worked in ten- and fourteen-hour shifts alternating from week to week and working seven days and an average of 84 hours each week. In the instant case, instead of working ten hours per day one week and fourteen hours per day the next, as the firemen apparently did in the Galveston cases, the regular firemen of Amarillo worked twelve hours out of each calendar day of each calendar week, and the pbx operators worked eight hours out of each calendar day of each calendar week.

It is the contention of the appellant that the requirements of the statute were fulfilled by reason of the fact that the regular firemen, who began working at noon in alternating platoons, were off duty for a full twenty-four hour period following each twenty-four hour period on duty, and that the schedule of the operators was in compliance because each operator was off duty for a full twenty-four hour period each week, and this in spite of the fact that each fireman and operator, respectively, worked the same number of hours out of each calendar day. In other words, the city contends that any twenty-four hour period, from noon to noon or from 7 a. m. to 7 a. m., constitutes a "day" within the meaning of the above-quoted provisions of

Article 1583. With this contention we are not in accord.

Since we are dealing with a penal statute, we must look primarily to the criminal law for the meaning of the word "day" as used in this Article.

In the case of Muckenfuss v. State, 55 Tex.Cr.R. 229, 116 S.W. 51, 52, 20 L.R.A., N.S., 783, 131 Am.St.Rep. 813, 16 Ann.Cas. 768, wherein the defendant was charged with two violations of the Sunday law on the same day, the Court of Criminal Appeals, speaking through Judge Davidson, said: "'Sunday,' as used in this statute, means the entire day; that is, from midnight Saturday night until midnight Sunday. It includes 24 hours. Such has been the construction of 'day' in all the decisions of this state where simply a 'day' is mentioned."

In Speer v. State, 2 Tex.App. 246, 249, the accused, who was indicted for murder, was served at 1 p. m. with a copy of the special venire and at 3 p. m. the next day was compelled to go to trial over his objection that he had not had one day's service of the special venire facias as required by law. In reversing the case upon this point, the court held that as a general rule the law takes no cognizance of the fractional parts of a day, and further stated: "We know no rule of law or legal mode of computing time by which we would be warranted in holding that parts of two days make a day."

In Kelly v. State, 139 Tex.Cr.R. 156, 138 S.W.2d 1075, 1077, we find the following statement: "A 'day' is held to be from midnight to midnight, a period of twenty-four hours. Where the word 'day' is used, it has been uniformly held to mean twenty-four hours, as defined in this case. See also vol. 1 Words & Phrases, Second Series, page 1207."

In Janks et al. v. State, 29 Tex.App. 233, 15 S.W. 815, 816, involving the sale of liquor on an election day, but after the closing of the polls, the court said: "The word 'day,' as used in article 178 of the Penal Code, includes the time elapsing from 12 o'clock midnight to the succeeding one. It is not to be understood as denoting only the hours during which the polls are open."

The same rule seems to prevail in the civil law. In Dallas County v. Reynolds, Tex.Civ.App., 199 S.W. 702, 703, involving the sheriff's fees for keeping prisoners for only a portion of certain days, it was stated: "As a general rule the term 'day,' as used in legislative enactments or in contracts, means the whole 24 hours, that is, from midnight to midnight; especially is this the rule in reference to official services, except where it is in some way restricted or limited."

In Okanogan et al. v. United States, 279 U.S. 655, 49 S.Ct. 463, 466, 73 L.Ed. 894, 898, 64 A.L.R. 1434, the Supreme Court of the United States, in construing the meaning of the word "days," as used in the Constitution, said: "The words used in the Constitution are to be taken in their natural and obvious sense, * * * and are to be given the meaning they have in common use unless there are very strong reasons to the contrary. * * * The word 'days,' when not qualified, means in ordinary and common usage calendar days."

In further support of this rule are the following cases: Harris County et al. v. Hammond, Tex.Civ.App., 203 S.W. 451, writ refused; Miner v. Goodyear India Rubber Glove Mfg. Co., 62 Conn. 410, 26 A. 643; Talbott v. Caudill et al., 248 Ky. 146, 58 S.W.2d 385; Oliason v. Girard, 57 Idaho 41, 61 P.2d 288; 41 Tex.Jur. 344, Sec. 6; 11 Words & Phrases, Permanent Edition, p. 113.

It is therefore evident that unless otherwise indicated, or in some manner qualified or restricted, the word "day," as used in a statute or contract, means a twenty-four hour period from midnight to midnight. Such term is in no manner restricted or qualified in the statute in question and, therefore, its usual meaning must prevail. We are fortified in this conclusion by reason of the fact that section 5 of the Article provides that the city officials having supervision of the fire department shall designate the "days of the week" upon which each fireman shall not be required to be on duty. In making the designation provided in this section, surely it was intended that the city officials, in this instance the city manager, should designate particular calendar days, such as Sunday, Monday, etc., rather than a portion of two days; otherwise, the designations would not constitute "days of the week." We thus conclude that the term "day," as used in this statute, means the usual calendar day from midnight to midnight. Any oth-

er construction, in our judgment, would amount to judicial legislation rather than judicial interpretation.

■ The appellant asserts upon the theory of estoppel that the appellees cannot recover for the alleged overtime because they selected the schedule upon which they worked and agreed to work by it. The testimony does not sustain this theory. On the contrary, the evidence warrants the conclusion that the firemen were not even consulted about the schedule of December 1, 1939, and there is no testimony that they agreed to it, if such an agreement would amount to an estoppel against them, which question we are not required to decide. Certainly, the acceptance of their salaries for a less amount than due them by law would not estop the firemen from making these additional claims. Morrison v. City of Fort Worth, 138 Tex. 10, 155 S.W.2d 908; Crutcher v. Johnson County, Tex.Civ. App., 79 S.W.2d 932; State v. Steele, 57 Tex. 200. The only testimony in the record indicating any participation by the firemen in the formation of the schedule in question was that of the fire chief to the effect that some of the firemen objected to the shifts beginning at midnight. This fact would not, in our opinion, constitute an endorsement or selection of the December 1939 schedule by the appellees, if such would be material, nor would it necessarily indicate that the firemen were acquiescing in any manner in the violation of the law. They could object to the midnight shift and also consistently demand, regardless of the time of the shifts, that they be allowed a full calendar day off duty each week.

■ The appellant further asserts that it is not liable because it did not formulate the schedule nor require the firemen to work thereunder. This contention is based largely upon the testimony of the city manager to the effect that he allowed the fire chief· to make out the schedules for the firemen. The statute and the city charter together made this matter the duty and responsibility of the city manager. Moreover, the fire chief testified that he did not make any changes in the schedules without the city manager's approval and, further, that he discussed the schedule of December 1, 1939, with the city manager and no one else, and that the city manager agreed to the change and authorized him to start the shifts at 12 o'clock noon. The city manager testified that he instructed the fire chief to give the firemen twenty-four hours off duty but did not instruct him to give them a full calendar day, it being his impression that giving the men any twenty-four hours off duty would be in compliance with the law. He further testified that if the men had not worked according to the schedule, they could not have continued to draw the amount of money paid them and that he expected them to work in accordance with the schedule in order for them to earn the monthly salary paid them. We think this testimony was sufficient to support the implied finding of the court that the appellant city formulated the schedule and required the firemen to work under it, within the meaning of Article 1583.

■ The appellant also contends that, the evidence having shown a contract of hire between the appellees and the appellant, the appellees' rights were fixed under such contract, and if such contract was illegal, the appellees are precluded from recovering because they necessarily had to prove the illegal contract as a basis for recovery. In the Galveston cases it was held that the Penal Code provision was a part of the contract of employment and the weekly salary of the firemen was therefore earned in six days work, and that the firemen could recover additional reasonable compensation for services rendered to the city in excess of the six days services. It was further held that if a party can show a complete cause of action without proving his own illegal act, he can recover, notwithstanding such illegal act may appear incidentally and may be important in explanation of other facts in the case. We think those holdings are controlling here. The appellees were not suing on the illegal contract but upon a quantum meruit for overtime services, and, therefore, this suit comes under the rule expressed in the Galveston cases rather than that of Montgomery Ward & Co. v. Lusk et al., Tex.Civ. App., 52 S.W.2d 1110.

Our discussion above disposes of what we think are the controlling questions in this appeal. The other assignments urged by the appellant become immaterial and we overrule them without further comment.

The judgment is affirmed.